IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | | |
|---|---|---|
| LISA ELAINE WASSON, | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 1:21-CV-162-MJT |
| | § | |
| COMMISSIONER OF SOCIAL | § | |
| SECURITY | § | |
| | § | |
| | § | |
| **Defendant.** | § | |

**REPORT AND RECOMMENDATION OF**
**UNITED STATES MAGISTRATE JUDGE**

The Plaintiff, Lisa Elaine Wasson ("Wasson"), requests judicial review of a final decision

of the Commissioner of Social Security Administration with respect to her application for

disability-based benefits.  This action is before the undersigned magistrate judge for review,

hearing if necessary, and submission of a report with recommended findings of fact and

conclusions of law.[1]  The undersigned finds that the administrative law judge's decision lacks

reversible error and is supported by substantial evidence, and therefore recommends affirming the

decision denying benefits.

## I.   JUDICIAL REVIEW

United States district courts may review decisions of the Commissioner of the Social

Security Administration.  42 U.S.C. § 405(g) (2020).  The scope of judicial review is limited,

however, to determining whether (a) the Commissioner applied proper legal standards and (b) the

decision is supported by substantial evidence.  *See Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir.

---

[1] General Order 05-06 refers civil proceedings involving appeals from decisions of the Commissioner of Social
Security Administration to magistrate judges serving the divisions where the cases are filed.  *See also* 28 U.S.C. §
636(b)(1)(B) (2009) and E.D. TEX. CIV. R. CV-72 for the Assignment of Duties to United States Magistrate Judges.

1995); *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992).   When the Commissioner applies

proper law and the decision is supported by substantial evidence, the Commissioner's findings are

conclusive and must be affirmed.   *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also* 42

U.S.C. § 405(g).

     Reviewing courts, therefore, give the Commissioner's decisions great deference.   *Leggett,*

67 F.3d at 564.   Courts may not re-weigh evidence, try issues *de novo*, or substitute their

judgments for those of the Commissioner.   *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1995).

A court cannot reverse the Commissioner simply because the court might have decided the case

differently in the first instance.   *Elfer v. Texas Workforce Comm'n*, 169 F. App'x 378, 380 (5th

Cir. 2006); *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995) (stating that the court may not

"substitute [its] judgment for that of the Secretary").   Rather, it is for the Commissioner to weigh

evidence and resolve conflicts.   *See Anthony*, 954 F.2d at 295; *Selders v. Sullivan*, 914 F.2d 614,

617 (5th Cir. 1990).

     When the Commissioner fails to apply correct principles of law, or when "substantial

evidence"[2] does not support the Commissioner's decision, the governing statute authorizes a

reviewing court to enter, upon the pleadings and the transcript of the record, a judgment modifying,

or reversing the decision of the Commissioner of Social Security, with or without remanding the

cause for a rehearing.   *See* 42 U.S.C. § 405(g).   Thus, courts have power to remand for further

administrative proceedings, or they may direct the Commissioner to award benefits without a

rehearing.   Ordinarily, courts remand for further administrative proceedings to address and cure

---

[2] "Substantial evidence" is a term of art meaning "more than a mere scintilla."  *Biestek v. Berryhill,* 139 S. Ct. 1148, 1154, 203 L. Ed. 2d 504 (2019) (citing *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Anthony v. Sullivan*, 954 F.2d at 292.   Evidence is "substantial" when it is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion.  *Biestek,* 139 S. Ct. at 1154*; Richardson v. Perales*, 402 U.S. at 401; *Marcello v. Bowen*, 803 F.2d 851, 853 (5th Cir. 1986).

deficiencies.  *See, e.g., Newton v. Apfel*, 209 F.3d 448, 460 (5th Cir. 2000).

## II.  BACKGROUND

### A.     Procedural History

Wasson applied for disability insurance benefits on March 16, 2016, due to impairments that allegedly became disabling on April 1, 2015.  (Tr.238-250.)   After an initial denial and hearing, on November 30, 2017, Administrative Law Judge David Gutierrez (ALJ Gutierrez) denied Wasson's application finding her not disabled.  (Tr. 31-46.)   Wasson requested review of his decision based upon a challenge to his appointment under the Appointments Clause, and ALJ Gutierrez's decision was later vacated.   (Tr. 4.)

On October 15, 2019, the Appeals Council issued a new independent decision finding Wasson not disabled.  (Tr. 4-17.)   Wasson appealed this decision in the United States District Court for the Eastern District of Texas on December 19, 2019.   *Wasson v. Comm'r of S.S.A.*, No. 1:19-cv-629 (E.D. Tex. Dec. 19, 2019), ECF No. 1.   The Commissioner filed an unopposed Motion to Remand so that further consideration could be given to Wasson's residual functional capacity (RFC) and whether she could perform her past relevant work or alternative work, along with supplemental expert evidence and another administrative hearing.  *Id.* at ECF No. 13.   On July 31, 2020, the court granted the motion and reversed and remanded the case for reconsideration.  *Id.* at ECF Nos. 17, 18.   Consequently, on August 11, 2020, the Appeals Council vacated its prior decision and ordered that a new hearing and decision be made in accordance with the court's order.   (Tr. 584-587.)

On December 23, 2020, on remand, a new administrative hearing was held by ALJ William B. Howard (ALJ Howard) by telephone.   (Tr. 556-579.)   After that hearing, on February 12, 2021, ALJ Howard issued a decision denying Wasson's application.   (Tr. 538-550.)   This

became the final agency decision.   Wasson requested review of ALJ Howard's decision by filing

this appeal to the district court on April 12, 2021.   (Doc. #1.)

B.    Factual History

Wasson was 56 years old on the date last insured with a high school education and past

work experience as an eligibility worker, which used the following skills: record keeping, people

skills, and clerical work.   (Tr. 548.)

C.    Administrative Decision and Appeal

ALJ Howard utilized the five-step sequential analysis model specified by regulations and

approved by courts in reaching his decision denying Wasson's application.[3]   At step one, ALJ

Howard found that Wasson has not engaged in substantial gainful activity from her alleged onset

date of April 1, 2015, through her date last insured of December 31, 2020.   (Tr. 541.)   At step

two, he found that Wasson has the following severe impairments: disorders of the back, morbid

obesity, abnormal left ventricular relaxation, ankle disorder, and mild degenerative changes of the

knee.   (Tr. 541-543.)   At step three, ALJ Howard stated these impairments do not meet or

medically qualify under the criteria of any listed impairment in the regulations at 20 C.F.R. pt.

404, subpt. P, app 1 (Listed Impairments) for presumptive disability.   (Tr. 543.)   At step four,

---

[3]  Pursuant to 20 C.F.R. § 404.1520(a)-(f), the five steps are generally as follows:
  1.  The Commissioner ascertains *whether an applicant currently engages in substantial gainful activity*. (If so, a finding of non-disability is entered, and the inquiry ends.)
  2.  The Commissioner determines *whether an applicant has a severe impairment or combination of impairments.*   (If not, the inquiry ends, and a finding of non-disability is entered.)
  3. The Commissioner determines *whether any severe impairment(s) equals or exceeds those in a Listing of Impairments, 20 C.F.R. Subpt. P, Appendix 1* ("the Listings").   (If so, disability is presumed, and benefits are awarded.   If not, the analysis continues.)
  4.  The Commissioner determines *whether any impairment(s) prevents the claimant from engaging in regular previous employment*.   (If so, a *prima facie* case of disability is established and the burden of going forward (to the fifth step) shifts to the Commissioner.   *See Chaparro v. Bowen*, 815 F.2d 1008, 1010 (5th Cir. 1987)).
  5.  The Commissioner determines *whether other work exists in the national economy which the applicant can perform*.   (If so, the burden shifts back to the applicant to show he cannot perform the alternative labor.   *See id.*; *Taylor v. Bowen*, 782 F.2d 1294, 1298 (5th Cir. 1986)).

ALJ Howard determined that Wasson retained the residual functional capacity (RFC) to perform sedentary work, including: standing/walking two hours in an eight-hour workday; sitting at least six hours in an eight-hour workday; lifting/carrying ten pounds occasionally and about five pounds frequently; no climbing of ropes, ladders or scaffolds; and no work in an environment with heavy industrial vibrations.   (Tr. 544-548.)

Ultimately, ALJ Howard found Wasson was not disabled and able to perform past relevant work at step four.   (Tr. 548.)   In the alternative, at step five, ALJ Howard, relying on vocational expert testimony, found that Wasson was not disabled because she was able to perform other work that existed in significant numbers in the national economy, such as contact representative.   (Tr. 549.)

### III.   POINTS OF ERROR

Wasson argues that ALJ Howard failed to property consider the severity of her depression and anxiety at step two.   Further, she alleges that the mental RFC determination lacks the support of substantial evidence because ALJ Howard failed to properly weigh the opinions of Dr. Frankie Clark, Ph.D., the psychological consultative examiner, and the state agency psychological consultants.

The Defendant responds that Wasson's mental impairments are non-severe and ALJ Howard properly considered and discounted the medical opinions regarding Wasson's mental RFC.

### IV.   DISCUSSION AND ANALYSIS

A.  Step Two – Mental Impairments

At step two of the evaluation process, the ALJ determines whether an applicant has a *severe* impairment or combination of impairments.   20 C.F.R. § 404.1520 (2012).   In *Stone v. Heckler*,

752 F.2d 1099, 1101 (5th Cir. 1985), the Fifth Circuit considered the standard of "severity" and established that "[a]n impairment can be considered as not severe only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience."    Recently, in *Keel v. Saul*, 986 F.3d 551, 557 (5th Cir. 2021), the Fifth Circuit resolved a split among the district courts in the Fifth Circuit and concluded that Social Security Ruling (SSR) 85-28, while not using the identical language of *Stone*, comports with the *Stone* severity standard.    As the Fifth Circuit stated in *Keel*, SSR 85-28 provides that "'[a]n impairment or combination of impairments' is 'not severe' if 'medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered.'" S.S.R. 85-28, 1985 WL 56856, at *3 (1985).    The Fifth Circuit concluded in *Keel* that SSR 85-28 uses language "similar" to *Stone*, and that "[t]hough the precise wording differs, *Stone* and SSR 85-28 are not substantially different enough to warrant a finding of error" where an ALJ applies the SSR 85-28 standard.    *Keel*, 986 F.3d at 556-557.    Moreover, *Keel* held that even if it is "conclude[d] that the ALJ failed to properly apply the *Stone* standard, such a conclusion does not require an automatic reversal—if the ALJ proceeds past step two, we consider whether the error was harmless."    *Id.* (citing *Taylor v. Astrue*, 706 F.3d 600, 603 (5th Cir. 2012) (applying harmless error analysis where the ALJ failed to cite *Stone* at step two but proceeded to later steps in the sequential evaluation process)).

Although ALJ Howard found severe physical impairments, he found that Wasson's alleged mental impairments of depression and anxiety were not severe.    In making his step two determination, ALJ Howard references SSR 85-28, but misstates the standard multiple times

6

indicating that the impairment must have a "significant limitation" on the claimant's ability to perform basic work activities to be severe.  (Tr. 541-542.)  As stated above, SSR 85-28 states that an impairment is not severe if it has no more than a minimal effect on an individual's ability to work.   In *Cardona*, the court visited this same issue and stated that the "significantly limits" language from 20 C.F.R. § 404.1520(c) has been repudiated by the Fifth Circuit.  *Cardona v. Kijakazi*, No. EP-21-CV-00142-DCG, 2022 WL 16953665, at *4 (W.D. Tex. Nov. 14, 2022) (citing *Stone*, 752 F.2d at 1101).  In that case, the ALJ did not proceed past two so the court remanded the case finding that "[r]equiring Plaintiff to show that [her] impairments cause significant limitations on [her] ability to work contradicts the fact that, at step two, a claimant need only 'make a de minimis showing that her impairment is severe enough to interfere with her ability to work.'"  *Id.* (citing *Anthony v. Sullivan*, 954 F.2d 289, 293 n.5 (5th Cir. 1992)); *see also Murray v. Kijakazi*, No. 4:20-CV-1707, 2022 WL 824844, at *3 (S.D. Tex. Mar. 18, 2022) ("the ALJ applied the wrong legal standard as '*Stone* requires a non-severe impairment to have no effect on an individual's ability to work,' not have no significant limitations."); *Scroggins v. Astrue*, 598 F. Supp. 2d 800, 805 (N.D. Tex. 2009) ("*Stone* provides no allowance for a minimal interference on a claimant's ability to work.").

Despite stating the incorrect standard, courts have gradually moved away from an application of *Stone* that looks only to "the use of 'magic words," and now consider the ALJ's entire analysis to determine whether they applied the proper severity standard.  *Pickar v. Comm'r of Soc. Sec.*, No. 4:22-CV-00066-O-BP, 2022 WL 16935255, at *3 (N.D. Tex. Oct. 27, 2022), *R. & R. adopted*, 2022 WL 16927803 (N.D. Tex. Nov. 14, 2022).

In this case, the Defendant argues that ALJ Howard performed a thorough paragraph B analysis of Wasson's mental impairments and properly concluded that these impairments were not

severe.   (Doc. #14.)   Therefore, the proper standard was ultimately used.

In *Pickar*, the court cautioned against only relying on the magic words used in *Stone* and found the ALJ's step two finding correct where he analyzed the claimant's alleged mental impairments using the psychiatric review technique and found no more than mild limitations in the four functional areas pursuant to 20 C.F.R. § 404.1520: (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself.   *Pickar*, 2022 WL 16935255, at *3.   The court also noted that this finding was consistent with the state agency medical consultants and considered all of the claimant's medical records and subjective complaints.   *Id.*   Consequently, the court found the ALJ was correct in its step two determination and also in not assessing any mental functional limitations in the RFC analysis regarding the claimant's ability to perform work related activities.   *Id.*

In this case, ALJ Howard considered the four functional areas for the alleged mental impairments and found no limitations in three areas and only a mild limitation in the area of concentrating, persisting or maintaining pace.   (Tr. 542.)   For the functional area of understanding, remembering, or applying information, he noted that Wasson prepares her own meals, cares for her husband, does chores, drives a car, shops, manages finances, and uses a computer.   (*Id.*)   For the area of interacting with others, ALJ Howard discussed her relationship with her husband and her admission that she has no problems with people in authority and can go out in public alone to shop.   (*Id.*)   For Wasson's mild limitation in the area of concentrating, persisting or maintaining pace, he noted Dr. Clark's findings regarding her sadness could possibly interfere with task completion at times.   (*Id.*)   He explained that despite this finding based upon subjective complaints, Dr. Clark's exam was normal and found only a mild limitation that would not impact her ability to fully function in a work setting.   (*Id.*)   For the last area of adapting or

managing oneself, ALJ Howard pointed to Wasson's report that she was able to personally care for herself, drive, shop, use a computer, go out alone, prepare meals, and perform chores. (*Id.*) The court finds that considering ALJ Howard's entire analysis, he applied the proper severity standard.

In the alternative, the Defendant states that these non-severe impairments were considered in assessing Wasson's RFC even though no limitations were assigned with regard to these alleged impairments. (*Id.*) Consequently, she asserts that even if there were error, it would be harmless error. Wasson argues that a limitation to only occasional interaction with the public should have been included in her RFC assessment, and such a limitation would have excluded her past work thereby creating harmful error. (Doc. #13, at 11.)

Administrative disregard or violation of regulatory requirements is subject to harmless error analysis. *See NLRB v. Wyman-Gordon Co.*, 394 U.S. 759, 766 n.6 (1969) (Harmless error rule is appropriate when "remand would be an idle and useless formality"); *see also Frank v. Barnhart*, 326 F.3d 618, 622 (5th Cir. 2003) (citing *Morris v. Bowen*, 864 F.2d 333, 336 (5th Cir. 1988) ("applying harmless error analysis in disability benefits context")). An error is harmless unless there is reason to think that remand might lead to a different result. *See Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988) ("This court will not vacate a judgment unless the substantial rights of a party have been affected").

In this particular instance, the general rule is that failure to specifically consider an impairment at step two may be harmless if the ALJ proceeds to remaining steps and considers whether to assess limitations associated with that non-severe impairment. *See e.g., Gibbons v. Colvin,* No. 3:12–CV–0427–BH, 2013 WL 1293902, at *16 (N.D. Tex. Mar. 30, 2013) (any error at step two in assessing the claimant's mental impairment was harmless); *Reliford v. Colvin,* No.

H–12–1850, 2013 WL 1787650, at *13 (S.D. Tex. April 25, 2013) ("even if the ALJ's failure to make a specific severity finding with regard to foot pain was an error, it was harmless because he considered related limitations at subsequent steps of the disability analysis"); *Garcia v. Astrue,* No. M–08–264, 2012 WL 13716 (S.D. Tex. Jan. 3, 2012) (even if the ALJ erred at step two in failing to address the severity of the claimant's right leg venous thrombosis, that error was harmless because the ALJ considered all the claimant's limitations in determining his RFC, and decided the case at step five).

After deciding Wasson's impairments at step two, ALJ Howard went on to consider Wasson's mental impairments at step four for the RFC assessment.  ALJ Howard specifically referenced findings from Wasson's consultative psychological exam and the SAMC's mental RFC evaluation, as well as her subjective complaints and hearing testimony, which are discussed more fully *infra*.  (Tr. 544-548.)   Based on this evidence, ALJ Howard decided that Wasson had no mental functional limitations.  The court finds that ALJ Howard appropriately considered and discussed her depression and anxiety in the RFC assessment despite finding earlier in the sequential evaluation that they were non-severe impairments, and he was not required to include any functional limitations where substantial evidence does not support them.  *See Campbell v. Saul*, No. 2:21-CV-00010, 2022 WL 17729261, at *11 (S. D. Tex. Aug. 10, 2022), *R. & R. adopted*, 2022 WL 17722666 (S. D. Tex. Aug. 25, 2022) (finding no error where ALJ found depression non-severe and assessed no mental limitations in the RFC for such); *Gibbons v. Colvin*, 2013 WL 1293902, at *16 (N. D. Tex. Mar.30, 2013) (holding that *Stone* error potentially causing ALJ not to recognize certain impairments as severe at step two, was harmless because ALJ considered the impairments in the RFC).

Accordingly, any *Stone* error was harmless with respect to Plaintiff's mental impairments because it is inconceivable that the ALJ would have assessed a different mental RFC—and thereby reached a different disability determination at step five—if he had applied the *Stone* severity standard at step two.

B.   Mental Residual Functional Capacity ("RFC")

The regulations state that RFC means "the most you can still do despite your limitations." 20 C.F.R. § 416.945 (2012).   Thus, when making an RFC determination, the ALJ decides whether an applicant retains the physical and mental abilities necessary to perform activities generally required by competitive, remunerative work.   *See id.*; SSR 96-8p, 1996 WL 374184 (July 2, 1996).   The RFC involves three components: physical abilities, mental abilities, and other abilities affected by impairments.   20 C.F.R. § 416.945(b)-(d).

A person's RFC is assessed at steps four and five of the sequential evaluation process.   At that point, the person has demonstrated an impairment of a magnitude sufficient to significantly limit the ability to do basic work activities (step two), but not so severe as to match listed impairments (step three) from which disability is presumed.   Thus, the Commissioner must determine whether, despite the presence of severe impairments, the person retains functional capacity to perform past relevant work (step four), and, if not, any available alternative work (step five).   SSR 96-8p, 1996 WL 374184 (July 2, 1996).   An ALJ's assessment of a person's RFC forms the basis of a hypothetical question to which a vocational expert may respond with an opinion as to whether there is alternative available work that a person with the applicant's impairments and functional limitations can perform.   *See Frazier v. Colvin*, No. A-11-CA-901-SS, 2013 WL 12393909, at *5 (W.D. Tex. Aug. 30, 2013).

In assessing an applicant's physical, mental, and sensory abilities, the regulation directs an ALJ to consider the claimant's exertional and non-exertional capacity. Exertional capacity addresses an individual's limitations and restrictions of physical strength and defines the individual's remaining abilities to perform each of seven strength demands: sitting, standing, walking, lifting, carrying, pushing, and pulling. SSR 96-8p, 1996 WL 374184 (July 2, 1996). Non-exertional capacity considers all work-related limitations and restrictions that do not depend on an individual's physical strength, *i.e.*, all physical limitations and restrictions that are not reflected in the seven strength demands, and mental limitations and restrictions, including an individual's abilities to perform physical activities such as postural (*e.g.*, stooping, climbing), manipulative (*e.g.*, reaching, handling), visual (seeing), communicative (hearing, speaking), and mental (*e.g.*, understanding and remembering instructions and responding appropriately to supervision). *Id.* In addition to these activities, the ability to tolerate various environmental factors (*e.g.*, tolerance of temperature extremes) is also a non-exertional capacity consideration. *Id.*

In the present action, the ALJ concluded that Wasson can perform sedentary work, including: standing/walking two hours in an eight-hour workday; sitting at least six hours in an eight-hour workday; lifting/carrying ten pounds occasionally and about five pounds frequently; no climbing of ropes, ladders or scaffolds; and no work in an environment with heavy industrial vibrations. (Tr. 544-548.)

Wasson argues that the ALJ's RFC finding is unsupported by substantial evidence because it conflicts with portions of Dr. Clark's consultative medical exam report and the state agency psychological consultant's medical opinions regarding her mental functionality. (Doc. #13.) Wasson's brief does not dispute the physical functional limitations found by the ALJ.

1. *Evaluation of Medical Opinions*

The Social Security Administration promulgated a new rule regarding residual functional capacity determinations to govern all claims filed on or after March 27, 2017.  *See* 20 C.F.R. § 404.1520c (2017).  Wasson applied for disability insurance benefits on March 16, 2016.  (Tr. 238-250.)  Therefore, the old regulations governing the evaluation of medical opinions apply to this case.   The old regulations focused more on the longstanding "treating-physician rule," which required the ALJ to give a treating physician's opinion "controlling weight" in the absence of certain other specific findings.  *See* 20 C.F.R. § 404.1527(c)(2) (describing the former "treating physician" rule).   However, Wasson's arguments focus on the opinions of two consultative medical opinions.   Therefore, the preferential treatment and discussion of the six factors set forth in 20 C.F.R. § 404.1527(c)(2) for treating physicians does not apply in this case. *See Lewis v. Barnhart*, No. CIV–A–H–05–1259, 460 F. Supp. 2d 771, (S.D. Tex. 2006) (stating that because a physician was only a consultative examiner, the ALJ was not required to provide the detailed analysis of the factors set forth in 20 C.F.R. § 404.1527).

To determine a claimant's RFC, the ALJ is also required to consider and explain the weight given to non-treating source opinions, such as consultative examiners. 20 C.F.R. § 404.1527(e). Although the ALJ is free to assign appropriate weight to consultative examination opinions, the ALJ may not reject a medical opinion without an explanation supported by good cause.  *Mayberry v. Saul*, No. 4:19-CV-1239, 2020 WL 5239124, at *2 (S.D. Tex. Aug. 11, 2020), *R. & R. adopted*, 2020 WL 5234926 (S.D. Tex. Sept. 2, 2020).

In this case, Wasson was personally examined by consultative examiner Dr. Frankie Clark, Ph. D. for her alleged mental impairments.   (Tr. 393-396.)   In addition, Wasson's mental health medical records were evaluated by state agency medical consultants Dr. Leela Reddy, M. D. and

Dr. Matthew Wong, Ph. D..   (Tr. 88-113.)

On June 14, 2016, Dr. Clark examined Wasson and noted mostly normal activities of daily living.   (Tr. 394.)   For social functioning, he noted that she has no friends but has a good relationship with her husband and has no problems with people in authority.   (*Id.*)   As to her ability to complete tasks, Dr. Clark noted that Wasson has some emotional problems that may interfere.   (*Id.*)   He also wrote that she had no stress related job terminations or any psychiatric hospitalizations.   (*Id.*)   He observed that she appeared sad but had normal thought processes and content and no perceptual abnormalities.   (Tr. 395.)   Dr. Clark's exam also showed cooperative affect with a good fund of information, good recall, average intelligence, normal judgment and insight, and no difficulty with memory or concentration.   (*Id.*)   Dr. Clark's clinical impression was persistent depressive disorder, late onset with pure dysthymic syndrome.   (Tr. 396.)   His medical opinion regarding her functional capability stated that Wasson "wouldn't have difficulty with simple instructions.   Persistence and pace, getting along with others and dealing with pressures on the job are *likely* a problem for her."   (*Id.*) (emphasis added).   ALJ Howard rejected Dr. Clark's functional capacity assessment finding it inconsistent with the objective findings in Dr. Clark's exam and relying too heavily upon Wasson's subjective complaints. (Tr. 546.)   He gave the entirety of the findings little weight.   (Tr. 547.)

On July 13, 2016, Dr. Reddy evaluated Wasson's medical records, including Dr. Clark's report, and found that Wasson has an affective disorder severe impairment with a mild limitation in activities of daily living, moderate limitation in social functioning, and moderate difficulties in maintaining concentration, persistence, or pace.   (Tr. 92.)   Dr. Reddy went on to state that Wasson is moderately limited in her ability to carry out detailed instructions and work in coordination with or in proximity to others, but she had no social interaction limitations.   (Tr. 97.)

Her ultimate finding states that "claimant is able to understand, remember, and carry out detailed instructions, make decisions, concentrate for extended periods, interact with others, and respond to changes." (*Id.*)

On October 11, 2016, Dr. Wong also examined Wasson's records and likewise found similar moderate limitations, except that she is not significantly limited in working in coordination with or in proximity to others but would be moderately limited in interacting with the general public. Dr. Wong's final findings state that Wasson is "able to understand, remember, and carry out detailed instructions, make decisions, concentrate for extended periods, interact with others, and respond to changes." (Tr. 111.) ALJ Howard gave both of the state agency opinions little weight since he found her mental impairments to be non-severe. (Tr. 548.) He also noted that the record shows very long gaps in her psychiatric treatment despite having access to mental health treatment through the county. (*Id.*)

Wasson points to her overall medical records to establish her depression and anxiety severity. (Doc. #13, at 9.) However, these records were prior to her onset date (April 2015) going back to 2013, during most of which she was working. Dr. Jimmie Bussey noted depression without much evaluation, and no functional limitations were given. (Tr. 332-384.) In addition, her treatment with a psychiatrist, Dr. Groves, is not documented. Wasson requested these records, and Dr. Groves stated there were no records and/or refused to provide the records. (Tr. 51.)

Wasson also argues that ALJ Howard's rejection of Dr. Clark's and the SAMCs' opinions leaves his RFC unsupported resulting in a *Ripley* error. In *Ripley*, there was no medical source statement describing the functional limitations or types of work that the applicant was still capable of performing despite his back impairment. *Ripley v. Chater*, 67 F3d 552 (5th Cir. 1995). The Fifth Circuit found that the ALJ's RFC determination was therefore not supported by substantial

15

evidence, so the court remanded the case with instructions to the ALJ to obtain a report from a treating physician. *Id.* at 557–58; *see also Sendejas v. Berryhill*, No. 3:16-CV-1636-BF, 2017 WL 1649898, at *4 (N.D. Tex. May 1, 2017) ("Because the ALJ may not make a RFC determination where there is no medical opinion addressing the effects of Plaintiff's mental impairment on her ability to perform work-related activities, the ALJ's decision is not supported by substantial evidence."); *Tyler v. Colvin*, No. 3:15-CV-3917-D, 2016 WL 7386207 (N.D. Tex. Dec. 20, 2016) (finding that an ALJ impermissibly relied on his own medical opinion to develop his RFC determination); *Geason v. Colvin*, No. 3:14-CV-1353-N, 2015 WL 5013877, at *5 (N.D. Tex. July 20, 2015) ("Because the ALJ erred in making an RFC determination without medical evidence addressing the effect of Plaintiff's impairment on her ability to work, the ALJ's decision is not supported by substantial evidence.").

This case is distinguishable from those cited above. There are three medical opinions regarding Wasson's mental impairments, and ALJ Howard gave them all "little" weight. He did not fully reject them. The SAMCs also performed the psychiatric review technique in evaluating her mental impairments. There were differing conclusions by these three doctors. ALJ Howard took these findings into consideration and incorporated some of them but did not fully adopt them, nor did he find her mental impairments severe. It was within ALJ Howard's discretion to determine the credibility of the various medical reports in the record. *Griego v. Sullivan*, 940 F.2d 942, 945 (5th Cir. 1991). It is also ALJ Howard's job to craft the RFC based on all the relevant medical and other evidence. 20 C.F.R. §§ 404.1545, 404.1546; *Taylor v. Astrue*, 706 F.3d 600, 602-03 (5th Cir. 2012). The RFC is an administrative finding of fact, and the ALJ, not a medical source, is responsible for this assessment. *Taylor*, 706 F.3d at 602-03 (ALJ has the "sole responsibility" to assess the RFC and what the claimant "characterizes as the ALJ substituting

16

his opinion is actually the ALJ properly interpreting the medical evidence to determine his capacity for work"). ALJ Howard evaluated the record as a whole and rendered a decision that reconciles conflicting medical evidence.

The social security regulations explain that the ALJ is the fact-finder in making the RFC assessment, and the ALJ is not required to adopt the RFC verbatim from a medical opinion, as this would nullify his role as fact-finder. *Webster v. Kijakazi*, 19 F.4th 715, 719 (5th Cir. 2021) ("Though the ALJ neither adopted the state agency report verbatim nor accepted the testimony of Dr. Small, it cannot be said that his decision was not based on substantial evidence or that he improperly applied the relevant legal standards."); *Pete v. Comm'r Soc. Sec. Admin.*, No. 6:18-CV-01239, 2020 WL 1492727, at *6 (W.D. La. Feb. 24, 2020), *R. & R. adopted*, 2020 WL 1492705 (W.D. La. Mar. 23, 2020) (citing *Fontenot v. Colvin*, 661 F. App'x 274, 277 (5th Cir. 2016)). "[T]he ALJ is entitled to determine the credibility of medical experts as well as lay witnesses and to weigh their opinions and testimony accordingly." *Moore v. Sullivan*, 919 F.2d 901, 905 (5th Cir. 1990).

The court in *Grennan*, also addressed this same issue and explained that "the law only requires an 'accurate and logical bridge' within the ALJ's RFC explanation." *Grennan v. Comm'r of Soc. Sec.*, No. 4:21-CV-00645-O-BP, 2022 WL 2056277, at *3 (N.D. Tex. May 23, 2022), *R. & R. adopted*, 2022 WL 2053168 (N.D. Tex. June 7, 2022) (citing *Price v. Astrue*, 401 F. App'x 985, 986 (5th Cir. 2010)). Further the court noted that "word-for-word recitations are not required so long as the explanation permits meaningful judicial review." *Id.*; *see also Hernandez v. Astrue*, 278 F. App'x 333, 338 (5th Cir. 2008) (requiring the ALJ to incorporate only those limitations she finds "consistent with the weight of the evidence as a whole").

The ALJ's explanation here provides such an "accurate and logical bridge" between the evidence considered and the conclusions reached.   In conclusion, the ALJ properly considered the medical opinions, and his RFC determination was properly based upon the medical evidence in the record, so his RFC determination is supported by substantial evidence.   The court holds that substantial evidence supports the ALJ's determination not to include any mental limitations in the RFC.

## V. RECOMMENDATION

ALJ Howard's application of the sequential analysis is free from legal error and supported by substantial evidence for the reasons discussed in the preceding sections.   Consequently, the administrative decision should be affirmed.

## VI. OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1)(c), each party to this action has the right to file objections to this report and recommendation.   Objections to this report must: (1) be in writing, (2) specifically identify those findings or recommendations to which the party objects, and (3) be served and filed within fourteen (14) days after being served with a copy of this report.   *See* 28 U.S.C. § 636(b)(1)(c) (2009); FED. R. CIV. P. 72(b)(2).   A party who objects to this report is entitled to a *de novo* determination by the United States district judge of those proposed findings and recommendations to which a specific objection is timely made.   *See* 28 U.S.C. § 636(b)(1) (2009); FED R. CIV. P. 72(b)(3).

A party's failure to file specific, written objections to the proposed findings of fact and conclusions of law contained in this report, within fourteen (14) days of being served with a copy of this report, bars that party from: (1) entitlement to de novo review by the United States district judge of the findings of fact and conclusions of law, *see Rodriguez v. Bowen*, 857 F.2d 275, 276–

77 (5th Cir. 1988), and (2) appellate review, except on grounds of plain error, of any such findings

of fact and conclusions of law accepted by the United States district judge, *see Douglass v. United*

*Servs. Auto. Ass'n*, 79 F.3d 1415, at 1428–29 (5th Cir. 1996) (en banc).

**SIGNED this the 24th day of January, 2023.**

 

_____
Christine L Stetson
UNITED STATES MAGISTRATE JUDGE